FILED
DEC - 7 2015
Clerk, U.S. District and Bankruptcy Courts

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Douglas E. Massey )
2127 Dominion Way )
Falls Church, VA, 22043 )
(202) 361-3017 )
)
Plaintiff, )
)
vs. )
)
The American Federation of )
Government Employees (AFGE), )
AFL-CIO )
80 F Street, NW )
Washington, DC 20001 )
)
Defendant )
)
J. David President Cox, )
President, AFGE )
80 F Street, NW )
Washington, DC 20001 )
)
Defendant )
)
William A. Preston, )
3804 Quisenberry Drive )
Alexandria, VA 22309 )
)
Defendant )

Case: 1:15-cv-02112
Assigned To : Mehta, Amit P.
Assign. Date : 12/7/2015
Description: Pro Se Gen. Civil (F Deck)

---

**COMPLAINT**

Plaintiff Douglas Massey ("Plaintiff") brings this Complaint *pro se* and states the following:

RECEIVED
DEC - 7 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## INTRODUCTION

1. Plaintiff is a member in good standing and an elected vice president of AFGE Local 17. Plaintiff was also an elected delegate to AFGE's National Convention in August 2015. Plaintiff brings this Complaint for violations of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411, because he was improperly expelled from AFGE's National Convention and subsequently removed from his elected position as second vice president of Local 17 due to his political opposition to the incumbent AFGE National President, J. David President Cox ("President Cox"), and his policies. President Cox and the president of Local 17, William Preston ("Preston'), collaborated in violating Plaintiff's rights under the LMRDA. Plaintiff seeks relief and damages.

## I. JURISDICTION

2. This Court has jurisdiction over the subject matter of this civil action pursuant to § 101(a)(1) and (2) and § 102 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411 and 412, because AFGE is a mixed union, representing both government and private sector employees, 29 C.F.R. § 451.3(a)(4), and because Plaintiff is a member of AFGE in good standing.

## II. VENUE

3. Venue lies in the United States District Court for the District of Columbia because the principal offices of AFGE and AFGE Local 17 are located in the District of Columbia, where a substantial portion of the events that gave rise to Plaintiff's claims transpired.

## III. PARTIES

4. Plaintiff is a member in good standing of AFGE, Local 17, AFL-CIO ("Local 17"), which serves bargaining unit employees at the Department of Veterans Affairs' ("VA" or "agency") Central Office, in Washington, DC.

5. AFGE is a labor organization as that term is defined in § 2(5) of the LMRA, 29 U.S.C. § 152(5), in that it is a mixed union, serving both federal and private sector employees. The principal office of AFGE is located at 80 F St, NW, Washington, DC, 20001.

6. President Cox is the National President of AFGE. His office is at AFGE Headquarters, 80 F St, NW, Washington, DC, 20001

7. Preston is the President of Local 17. His principal office is located at 810 Vermont Ave, NW, Room B 30, Washington, DC, 20420.

## IV. STATEMENT OF FACTS

8. In April 2014 Plaintiff was elected second vice president of local 17 for a two-year term to expire in March 2016. Local 17 Bylaws state the duties of the second vice president require handling and assigning "all complaints and EEO cases filed and assist the chief steward and stewards in their preparation of grievances and EEO cases." Plaintiff was also elected as a delegate to AFGE's National Convention held at the Walt Disney World Swann and Dolphin Resort ("hotel") in Orlando, FL, in August 2015.

9. Preston was elected president of Local 17 in the same election for a two-year term to expire in March 2016, the duties of which involve the general supervision of the local. Preston was a delegate to AFGE's National Convention by virtue of his office and was appointed as one of many sergeants-at-arms.

10. Plaintiff is employed at the VA and has been on 100% official time with Local 17 since January 2012. "Official time" refers to the time a union steward spends conducting union business as opposed to agency work, which, while currently in dispute, is controlled exclusively by Preston. Official time is a precious commodity to stewards representing union members.

11. Plaintiff and Preston share an office with third vice president Heather Gogola ("Ms. Gogola") at VA Central Office, although each has a private office at another VA building at 425 I St, NW, Washington, DC.

12. Until June 2015, Plaintiff and Ms. Gogola, both on 100% official time, had never opposed Preston in any of the numerous votes they had cast as both members and officers of Local 17 out of fear of having their official time removed and essentially losing their jobs, which was a common practice for Preston.

13. Plaintiff eventually opposed Preston in June 2015 when he voted against sending a newly-appointed steward to advanced arbitration training against Preston's specific directive. After Preston got upset and demanded another vote because he had promised this newly-appointed steward she could attend the training, Plaintiff replied, "Bill, I'm sorry but the training is not yours to promise. This is a democracy." Preston became enraged that Plaintiff had refused his directive to change his vote.

14. Plaintiff defied Preston a second time after Preston had warned him not to campaign against President Cox at the 2015 National Convention because Preston had given President Cox a large campaign contribution and had promised President Cox full support of Local 17's delegates. Despite this warning, Plaintiff made a campaign flyer denouncing President Cox for his inappropriate spending of union dues. The flyer had a photo of a VA employee who works as a barista in VA's Canteen, which read:

VOTE NO TO CORRUPTION!

VOTE YES TO REPRESENTATION!

These are just a few of the outrageous expenditures of President Cox in 2014:

| | |
|---|---|
| Charlie Palmer Steakhouse: | $51,539 |
| President Cox's Birthday Party: | $23,510 |
| Voice Coach: | $10,000 |

I URGE YOU NOT TO VOTE FOR PRESIDENT COX

My name is [redacted] and I am a proud employee at the Department of Veterans Affairs and loyal dues-paying member of AFGE. I am a single parent of two boys and attend school part time. Although I only make $30,000 per year, I have never complained about paying union dues – that is, until I learned that my union dues – OUR DUES – is being used to finance the lavish and luxurious lifestyle of President J. David Cox.

15. Plaintiff first criticized President Cox's spending at a meeting in President Cox's office on June 16, 2015, two months prior to the National Convention, after learning that AFGE had donated four-hundred thousand dollars ($400,000) to the American Friends of the Yitzhak Rabin Center (AFYRC) in 2014. In exchange for this donation, President Cox and AFGE leaders flew to Israel where President Cox received a prestigious award, all of which was financed by union dues with no benefit to AFGE or its members. Plaintiff told President Cox that even a steward at Local 17 with strong ties to Israel disagreed with this large donation to an outside organization because there was no apparent benefit to union members, and, therefore, Plaintiff would have to seriously consider supporting one of President Cox's opponents at the National Convention.

16. The National Convention began on Monday, August 17, 2015, with the voting of national officers on Wednesday, August 19, 2015, and voting concerning other internal union matters on the following two days. These internal union matters included issues such as a

proposed per-capita tax increase, which President Cox desperately wanted so that AFGE National could collect more union dues from its locals.

17. Plaintiff immediately began circulating his anti-Cox campaign flyers to delegates after arriving at the hotel on August 15, 2015. On the following day Preston confronted Plaintiff in the hotel lobby and ordered him to stop circulating the flyers, which Plaintiff ignored.

18.  Preston approached Plaintiff in the hotel lobby later that afternoon and stated, "I'm asking you as a friend and a colleague to support J. David President Cox." When Plaintiff indicated he intended to continue campaigning against President Cox and vote for his opponent, Preston replied, "I'm asking you as your boss." Plaintiff then asked, "Does that mean you'll take away my official time [if I don't support President Cox]?" Preston sternly replied, "Yes!"

19. After Preston levied his threat, Plaintiff put his arm around Preston and said, "Bill, I'm the wrong guy to bully. You can't bully me anymore. Do you understand?"

20. At around 3:00 p.m., two Orlando police officers and the hotel's head of security were at Plaintiff's hotel room door after Preston reported that he had been threatened and assaulted by Plaintiff in the crowded hotel lobby. After taking Plaintiff's statement, the officers declined to arrest him, and the hotel's head of security told Plaintiff that he could stay. Despite a lobby filled with delegates, Plaintiff is unaware of any witness who corroborates Preston's allegations against him.

21. Friends advised Plaintiff to stay away from all public areas in the hotel in order to prevent further false allegations by Preston. Plaintiff therefore stopped campaigning against President Cox and his policies because he remained in his hotel room or left the hotel property.

22. On August 17, 2015, Plaintiff was notified by two sergeants-at-arms that he was banned from the Convention hall until a hearing could be held to determine whether or not he

could vote at the Convention. On the following evening a panel of sergeants-at-arms interviewed both Preston and Plaintiff. The panel was superintended by Preston's close personal friend, AFGE Assistant General Counsel John Thompson. The panel declined to interview Ms. Gogola and failed to view footage from surveillance cameras in the hotel lobby at the time of the incident, despite being urged to do so by Plaintiff. The panel also failed to inform Plaintiff of the specific allegations against him and expressed absolutely no interest in Plaintiff's allegation that Preston had abused his authority by using blackmail and voter intimidation if improperly influence his vote.

23. The panel found that Plaintiff "tended to disrupt" the Convention, despite the fact that the Convention did not begin until August 17, 2015, a day after the alleged incident was reported. The panel determined that Plaintiff could vote for national officers on August 19 2015, but could not participate in any subsequent Convention activities, including the vote on the proposed per-capita tax increase, which Plaintiff vehemently opposed and President Cox supported. Like Preston, the panel members were all sergeants-at-arms and local union presidents.

24. On August 23, 2015, Sunday, Preston made good on his threat and notified Plaintiff via email that, effective immediately, he was removing his official time and, in effect, returning him to his agency job where he had prosecuted numerous grievances against management officials. Preston also undid an election and told Plaintiff, an elected vice president, that he can no longer represent employees at VA Central Office, in contradiction of Section 11 of Local 17 Bylaws requiring him to handle grievances and EEO complaints.

25. Speculation had arisen that, in light of what had transpired at the Convention, Plaintiff planned on running for the presidency of Local 17 at the next election in March 2016.

Preston was also aware that Plaintiff had been a popular candidate on his 2014 slate and had received the most votes out of the fourteen candidates who had run for various offices.

26. On September 18, 2015, Plaintiff sent the following email to William Kudrle, the AFGE staff attorney who was present during his interview with the sergeants-at-arms panel, urging that Preston be investigated for unlawfully engaging in voter intimidation:

> Bill,
>
> I offered testimony that Bill Preston, Sergeant-at-Arm, took a campaign flyer from me and refused to return it after I made several requests. He then used blackmail to unlawfully influence my vote. To date, AFGE has done nothing about this.
>
> Do I have to go to the Department of Labor?
>
> Doug

27. After Mr. Kudrle failed to respond, Plaintiff sent him a second email on September 22, 2015, requesting a response. Mr. Kudrle sent the following response:

> Hello Doug,
>
> I'm not sure what it is you wish for AFGE to do. If you wanted to file an election protest, that should have been filed with the election committee before the end of the National Convention. National Constitution, Appendix A, Part III, Section 2.
>
> I've attached the Sergeants-at-Arms Committee Report. This is the same report that was emailed to you on Tuesday, August 18, 2015.
>
> Best, Bill

28. Plaintiff did not reply because he was not challenging the election results but rather Preston's violation of the AFGE Constitution and federal law by interfering with his right to vote and express his opinion about serious issues concerning the union; and since Mr. Kudrle was obviously deflecting Plaintiff's serious allegations, it was apparent to Plaintiff that Preston was enjoying the protection of President Cox and the attorneys in the General Counsel's office.

29. In Preston's email notifying Plaintiff that his official time had been removed, Preston also directed Plaintiff to come to their shared office on Monday morning to turn over his files, turn in his office key, and clear out his workstation. Preston also prevented Plaintiff from having access to his case files and personal belongings by changing the lock on the union office door.

30. On Monday morning, August 24, 2015, Preston was waiting for Plaintiff in their shared office with three federal law enforcement officers. Plaintiff, however, reported to his office at 425 I Street, NW, Washington, DC, in order to avoid additional false allegations by Preston.

31. Preston then went to Plaintiff's office building at 425 I Street, NW, Washington, DC, and notified Plaintiff's agency supervisor that he feared for his safety because Plaintiff had threatened and assaulted him at the Convention. Plaintiff was immediately escorted out of the building by security and placed on administrative leave pending the agency's three-week investigation. The investigator for the agency, Chief Veterans Law Judge James March, did not believe Preston and allowed Plaintiff back to work with no proposed discipline.

32. On August 24, 2015, Preston filed an application for a temporary restraining order ("TRO") and a petition for a preliminary injunction in which he asked the Superior Court of the District of Columbia to order that Plaintiff "not have any contact with" Preston and to further restrain Plaintiff "from seeking [him] out." On September 8, 2015, a hearing was held on Preston's TRO application. After hearing testimony and considering evidence, Judge Henry Green denied the application and told Preston:

> I think you're using this Court to further the interests you have against this man, and the union in a supervisory position to him and the union, and I think you're trying to use this Court to further those interests. I do not credit your testimony as to this threat that he has made to you."

33. On September 9, 2015, Plaintiff submitted charges to Local 17's Executive Board against Preston for (1) engaging in conduct unbecoming a union member based on false and defamatory allegations he made to law enforcement officials at the Convention and to Plaintiff's supervisor; (2) for violating Local 17 Bylaws by undoing an election and removing Plaintiff's duties as second vice president; and (3) for being an active member of the Communist party – all pursuant to Article XXIII of the AFGE National Constitution.

34. On September 11, 2015, Local 17's Executive Board appointed an independent committee of investigation ("the committee") to investigate Plaintiff's allegations against Preston, in accordance with the AFGE National Constitution. The committee, comprised of three attorneys, found probable cause following its investigation. Before a trial committee was appointed, however, President Cox sent Local 17's Executive Board a memorandum on September 22, 2015, explaining that he was dismissing the committee and taking jurisdiction pursuant to his authority under Article IX, Section 5(e) of the AFGE Constitution, "that conditions within the Local are such that a fair and impartial investigation and trial of the charges . . . cannot be conducted by the Local."

35. President Cox took jurisdiction based entirely on *ex parte* statements by Preston without considering any other evidence or having any communication with Local 17's Executive Board or the committee.

36. President Cox did not appoint a national committee of investigation until the third week of November, approximately two months after taking jurisdiction, while AFGE's National Executive Council was in Washington, DC, and learned of the serious allegations against Preston and a possible cover up by President Cox's office in violation of federal law. President Cox's

committee of investigation is comprised of his political supporters and has yet to interview a single witness.

37. On November 20, 2015, Plaintiff, Ms. Gogola, and the three members of Local 17's committee of investigation addressed President Cox and AFGE's National Executive Council to ask President Cox why he was protecting Preston by, *inter alia*, taking jurisdiction of the charges filed against him, especially in light of Preston's gross violations of the AFGE Constitution and federal law. During Plaintiff's brief presentation, AFGE's Deputy General Counsel threatened to file a law suit against Plaintiff for defamation.

## V. DEFENDANTS' LIABILITY UNDER THE LMRDA

### COUNT I

**Attempting to prevent Plaintiff from voting and expressing his opinion**

38. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-37 in this Complaint.

39. The "Bill of Rights for Union Members" under the LMRDA provides, in pertinent part, that all members have "the right to participate equally in the system of union democracy, a general privilege that encompasses the more specific rights to nominate candidates, vote, and attend meetings, *see* 29 U.S.C. § 411(a)(1), and the right to "express any views, arguments, or opinions," including opinions related to union business or candidates for union office. *See* § 411(a)(2);

40. By intentionally and maliciously making false allegations to Orlando police officers in an attempt to have Plaintiff removed from the Convention because he openly opposed President Cox and his policies, Defendants violated the rights of the Plaintiff and the members who elected him as a delegate to the Convention under "Bill of Rights for Union Members."

## COUNT II

**Expelling Plaintiff from the Convention to prevent his right to vote and speak freely**

41. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-40 in this Complaint.

42. By intentionally and maliciously expelling Plaintiff from the Convention in order to prevent him from campaigning and voting against President Cox's policies, particularly the proposed per-capita tax increase, Defendants violated the rights of the Plaintiff and the members who elected him as a delegate to the Convention under the "Bill of Rights for Union Members."

## COUNT III

**Removing Plaintiff from his elected position as second vice president**

43. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-42 in this Complaint.

44. By intentionally and maliciously removing Plaintiff from his elected position as second vice president of Local 17, removing his official time, and banning him from Local 17's office because he opposed President Cox and his policies, Defendants violated the rights of the Plaintiff and the members who elected him as second vice president under the "Bill of Rights for Union Members."

45. Preston was also aware that Plaintiff would inevitably run against him for the presidency of Local 17 after his two-year term expires in March 2016. Removing Plaintiff from office was a preemptive act on Preston's part to harm him politically and make him a less effective candidate in the 2016 election.

## COUNT IV

**Making defamatory statements to Plaintiff's supervisor for expressing his opinion**

46. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-45 in this Complaint.

47. By intentionally and maliciously making defamatory statements to Plaintiff's supervisor in an attempt to have him removed from the building and disciplined because he openly opposed President Cox and his policies, Defendants violated Plaintiff's rights under the "Bill of Rights for Union Members."

48. Having Plaintiff disciplined and possibly removed from federal service was Preston's political strategy to ensure that Plaintiff could not prevail in the 2016 election.

## COUNT V

**Seeking a restraining order against Plaintiff for expressing his opinion**

49. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-48 in this Complaint.

50. By intentionally and maliciously abusing the judicial process by offering false statements in court in an effort to get a temporary restraining order and a preliminary injunction against Plaintiff simply because he openly opposed President Cox and his policies, Defendants violated Plaintiff's rights under the "Bill of Rights for Union Members."

51. Obtaining a restraining order and a preliminary injunction requiring Plaintiff to stay away from Preston would have made it nearly impossible for Plaintiff to run any kind of effective campaign. This, too, was a preemptive act on Preston's part to harm Plaintiff politically and make him a less effective candidate in the 2016 election.

## COUNT VI

**Improperly taking jurisdiction of Plaintiff's allegations against Preston**

52. Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-51 in this Complaint.

53. President Cox improperly took jurisdiction of three serious allegations Plaintiff had filed against Preston because of Preston's political and financial support, as well as Plaintiff's opposition to President Cox and his policies, in violation of the "Bill of Rights for Union Members." In doing so, President Cox violated the rights of Plaintiff and all Local 17 members because, according to the AFGE National Constitution, the local in which an individual member holds membership is the court of original jurisdiction for trial of charges against the local's members and officers. President Cox's obstruction of justice is also shown by his having appointed a committee of investigation comprised exclusively of his staunch political supporters to ensure that Preston escape punishment, thereby frustrating Plaintiff's administrative remedies.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendants, jointly and severally, on all counts, and requests that the Court award him:

(a) compensatory damages in the amount of $50,000 to include but not limited to Plaintiff's emotional pain and humiliation;

(b) punitive damages in the amount of one million dollars ($1,000,000.00);

(b) costs and any reasonable attorneys' fees incurred with this lawsuit;

(c) restoration of Plaintiff's 100% official time and full reinstatement to his elected position as second vice president of Local 17; and

(d) such other damages and relief as this Court finds just and equitable.

## VII. JURY TRIAL

Plaintiff requests a jury trial.

Respectfully submitted,

Douglas E. Massey, *pro se*
2127 Dominion Way
Falls Church, VA 22043
Mobile: (202) 361-3017
Email: douglas.massey@hotmail.com