**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **Douglas E. Massey,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil No. 1:15-cv-02112 (APM)** |
| | ) |
| **American Federation of Government** | ) |
| **Employees,** _et al._**,** | ) |
| | ) |
| **Defendants.** | ) |

_____ )

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Douglas Massey once held the elected union position of Second Vice President of the American Federation of Government Employees, or AFGE, Local 17. His termination from that post arose out of events that took place at AFGE's 2015 National Convention. At the Convention, Plaintiff had a tense encounter with Defendant William A. Preston, Local 17's President and a supporter of Defendant J. David Cox, the National AFGE President, who was then running for re-election. Plaintiff was in the lobby of the hotel at which the Convention was held, distributing leaflets that accused Cox of misusing union funds and opposed Cox's re-election, when Preston approached him. Preston urged Plaintiff to cease the leafleting and to support Cox. Preston then went further, suggesting that he would take away a critical benefit of Plaintiff's elected position if Plaintiff maintained his opposition to Cox. Plaintiff responded by placing his arm around Preston and telling him, "Bill, I'm the wrong guy to bully. You can't bully me anymore. Do you understand?"

Plaintiff alleges that, following this encounter, Preston and Cox undertook a series of retaliatory actions against him.  Plaintiff avers that, while at the Convention, Preston and Cox filed a false report with the local police accusing Plaintiff of threatening and assaulting Cox.  He also alleges that Preston and Cox caused him to be expelled from the Convention and prevented him from voting on union matters.  Plaintiff further contends that, after the Convention, Preston and Cox made good on Preston's threats and, among other things, removed him from his elected position; barred him from the local union office; made defamatory statements to Plaintiff's supervisor, which resulted in his placement on administrative leave for three weeks; and filed a frivolous application for a temporary restraining order against him.  In response to these alleged actions, Plaintiff filed an internal complaint with AFGE Local 17, which he asserts Cox improperly took jurisdiction over in order to protect his ally Preston.

Plaintiff now seeks to hold Defendants Preston, Cox, and AFGE liable for infringing his speech, voting, and assembly rights as a union member.  He brings this action asserting violations of what is known as the Bill of Rights for Union Members, which is contained within the Labor Management Reporting and Disclosure Act.  All three Defendants have moved to dismiss all claims against them.  For the reasons explained below, Preston's Motion is denied in its entirety; AFGE's Motion is granted in part and denied in part; and Cox's Motion is granted in its entirety.

## II.     BACKGROUND

### A.     Factual Background

Defendant American Federation of Government Employees ("AFGE") is a labor organization that serves employees of the Department of Veterans Affairs (the "VA"), along with employees of other government agencies.  Compl., ECF No. 1, ¶ 5; Def. Preston's Mot. to Dismiss,

ECF No. 13, Mem. in Support, ECF No. 13-1 [hereinafter Preston's Mot.], at 1. Defendant J. David President Cox is the National President of AFGE. Compl. ¶ 6.

Defendant William A. Preston is the President of a local chapter of AFGE, Local 17. *Id.* ¶ 7. Preston was elected to serve a two-year term, starting in 2014. *Id.* ¶ 9. As President, Preston's primary responsibility is to supervise the local chapter. *Id.* He also served as a delegate to and a "sergeant-at-arms" at AFGE's annual National Convention in 2015. *Id.*

Plaintiff Douglas Massey is a lawyer employed by the VA. Defs. AFGE and J. David Cox's Mot. to Dismiss, ECF No. 14 [hereinafter AFGE and Cox's Mot.], at 2. He is a member of Local 17 and, like Preston, was elected to serve a two-year term as a union officer—as Second Vice President—starting in 2014. Compl. ¶¶ 4, 8. Since January 2012, Plaintiff "has been on 100% official time with Local 17," meaning that he conducts union business on a full-time basis rather than spending part of his time working for the VA. *Id.* ¶ 10.

### 1. *Plaintiff's Opposition to Cox*

Like Preston, Plaintiff was elected as a delegate to AFGE's 2015 National Convention, which was held in Orlando, Florida, in August of that year (the "National Convention" or the "Convention"). *Id.* ¶ 8. Before the Convention, a rift began to develop between Plaintiff and Preston. It began when Plaintiff voted against one of Preston's specific directives, which involved sending a newly-appointed Local 17 steward to arbitration training. *Id.* ¶ 13.

Their relationship further deteriorated when, two months before the Convention, Plaintiff made known his opposition to Cox's re-election as President of AFGE. *Id.* ¶¶ 14-15. Plaintiff, during a meeting in Cox's office, said that he objected to the national union's donation of $400,000 to the American Friends of the Yitzhak Rabin Center, as well as a trip to Israel taken by Cox and other AFGE leaders that was entirely funded by union dues. *Id.* Plaintiff believed that the donation

and trip did not benefit AFGE and its members and told Cox that he "would have to seriously consider supporting one of President Cox's opponents at the National Convention." *Id.*

The acrimony between Plaintiff and Preston came to a head at the National Convention. Plaintiff had decided he could not support Cox, and in fact actively opposed him. Two days before the Convention's official start, on August 15, 2015, Plaintiff stood in the Convention hotel's lobby and distributed flyers encouraging AFGE delegates to vote against Cox. *Id.* ¶¶ 15, 17. The flyers stated "VOTE NO TO CORRUPTION!" and "VOTE YES TO REPRESENTATION!" and identified tens of thousands of dollars of profligate union expenditures allegedly authorized by Cox, specifically: $51,539 spent at Charlie Palmer Steakhouse; $23,510 spent for Cox's birthday party; and $10,000 spent for a voice coach. *Id.* The flyer urged members "NOT TO VOTE FOR PRESIDENT COX" and accused Cox of using union dues to "finance [his] lavish and luxurious lifestyle." *Id.*

The next day, Preston confronted Plaintiff in the lobby of the hotel. *Id.* ¶ 17. Preston said to Plaintiff: "I'm asking you as a friend and a colleague to support . . . President Cox," adding, "I'm asking you as your boss." *Id.* ¶ 18. Plaintiff then asked: "Does that mean you'll take away my official time [if I don't support President Cox]?" Preston replied, "Yes!" *Id.* Plaintiff then put his arm around Preston and said, "Bill, I'm the wrong guy to bully. You can't bully me anymore. Do you understand?" *Id.* ¶ 19.

### 2. *Retaliatory Actions against Plaintiff*

Following their confrontation in the hotel lobby, Preston filed a false police report accusing Plaintiff of threatening and assaulting him. Plaintiff became aware of the report when, that afternoon, two police officers and the hotel's head of security questioned him about the incident. They did not arrest him, and he was permitted to remain at the hotel. *Id.* ¶ 20.

The next day, August 17, 2015, two AFGE sergeants-at-arms notified Plaintiff "that he was banned from the Convention hall until a hearing could be held to determine whether or not he could vote at the Convention." *Id.* ¶ 22. The next evening, a panel of sergeants-at-arms (the "Sergeant-at-Arms Panel") interviewed both Plaintiff and Preston and determined that Plaintiff had "tended to disrupt" the Convention—even though Plaintiff's hotel lobby run-in with Preston occurred two days *before* the Convention officially started. The Sergeant-at-Arms Panel decided that, although Plaintiff could vote for national officers the following day, he would not be permitted to participate in any subsequent Convention activities, including voting on other union issues. *Id.* ¶ 23.

That did not end the matter, however. After the Convention, on August 23, 2015, Preston notified Plaintiff by email that he would be removing him from his "official time" position, which meant that Plaintiff would no longer be able to work full-time for the Union and instead would have to return to his job at the VA. *Id.* ¶ 24. Preston also effectively removed Plaintiff from his elected position. Preston told him that he could no longer represent employees at the VA's Central Office, one of his key responsibilities as Second Vice President. Compl. ¶¶ 8, 24. And he further instructed Plaintiff to come to his union office the next work day to "turn over his files, turn in his office key, and clean out his workstation." *Id.* ¶ 29. Preston also changed the lock on the union office's door. *Id.*

On August 24, 2015, instead of following Preston's directives and reporting to his union office, Plaintiff reported to his VA office. *Id.* ¶¶ 29-31. Later that day, Preston came to Plaintiff's VA office and told Plaintiff's supervisor that "he feared for his safety because Plaintiff had threatened and assaulted him at the Convention." *Id.* ¶ 31. "Plaintiff was immediately escorted out of the building by security and placed on administrative leave pending the agency's three-week

investigation." *Id.* The agency's investigator later allowed Plaintiff to return to work "with no proposed discipline." *Id.*

Also, on August 24, 2015, Preston filed an application for a temporary restraining order against Plaintiff in D.C. Superior Court. *Id.* ¶ 32. Preston's application was denied. *Id.* In denying the application, the presiding Judge stated: "I think you're using this Court to further the interests you have against [Plaintiff] . . . . I do not credit your testimony as to this threat that he has made to you." *Id.*

On September 9, 2015, Plaintiff filed a complaint against Preston with Local 17's Executive Board, alleging that Preston: (1) had engaged "in conduct unbecoming a union member based on false and defamatory allegations he made to law enforcement officials at the Convention and to Plaintiff's supervisor"; (2) had violated "Local 17 Bylaws by undoing an election and removing Plaintiff's duties as second Vice President"; and, rather oddly, (3) that Preston was "an active member of the Communist Party." *Id.* ¶ 33. The Executive Board of Local 17 appointed an independent committee (the "Local Committee") to investigate Plaintiff's allegations. *Id.* ¶ 34. The Local Committee ultimately found there to be "probable cause"—of what is not clear from the Complaint—against Preston. *Id.*

That is when Cox stepped in to protect Preston. As President of National AFGE, Cox exercised his authority to dismiss the Local Committee and ordered the National AFGE to take over the matter. *Id.* Two months later, Cox appointed a National Committee to review the charges against Preston. *Id.* ¶ 36. As of Plaintiff's filing of the Complaint, the National Committee had not commenced its investigation. *Id.*

### B.     Procedural History

On December 7, 2015, Plaintiff filed a six-count complaint against Preston, Cox, and AFGE, alleging violations of subsections (a)(1) and (a)(2) of the "Bill of Rights for Union Members" under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1), (a)(2).  *Id.* ¶ 1.  Preston filed a Motion to Dismiss, and AFGE and President Cox filed a separate joint Motion to Dismiss, with each Defendant seeking dismissal of all claims.  *See generally* Preston's Mot.; AFGE and Cox's Mot.  Those Motions are now before the court.

## III.     LEGAL STANDARD

Preston has moved to dismiss all counts against him (Counts I through V) pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust remedies and Rule 12(b)(6) for failure to state a claim.  Preston's Mot. at 4-13.  AFGE and Cox likewise have moved to dismiss all counts against them under Rule 12(b)(6) and, additionally, Count VI under Rule 12(b)(1) for lack of standing.  AFGE and Cox's Mot. at 1.  The governing legal standards for motions made under those rules are as follows.

### A.     Rule 12(b)(1)

On a motion to dismiss brought, as here, under Rule 12(b)(1), a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted) (internal quotation marks omitted).  The burden of demonstrating the contrary, including establishing the elements of standing, "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing must be demonstrated "for each claim" and "for each form of relief sought," *DaimlerChrysler*, 547 U.S. at 352 (citation omitted) (internal quotation marks omitted), "with the

manner and degree of evidence required at the successive stages of litigation," *Lujan*, 504 U.S. at 561. In evaluating a Rule 12(b)(1) motion, a court has broad discretion to consider relevant and competent evidence—including materials outside the pleadings. *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2004)).

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.,* 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

When evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015), and "construe the complaint 'in favor of the plaintiff, who must be granted the **benefit of all inferences** that can be derived from the facts alleged.'" *Hettinga v. United States*,

677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true, however, "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## IV. DISCUSSION

### A. The Bill of Rights for Union Members

Title I of the Labor Management Reporting and Disclosure Act (LMRDA) contains what is known as the Bill of Rights for Union Members. The Bill of Rights originated from the concern that the original bill that eventually became the LMRDA "did not provide general protection to union members who spoke out against the union leadership." *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 109 (1982). Title I was "designed to guarantee every union member equal voting rights, rights of free speech and assembly, and a right to sue." *Id.; see also Local No. 82, Furniture and Piano Moving v. Crowley*, 467 U.S. 526 (1984) ("Title I [of the LMRDA] is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline."); *Finnegan v. Leu*, 456 U.S. 431, 435-36, 442 (1982) ("[The LMRDA's] concerns [are] with promoting union democracy, and protecting the rights of union members from arbitrary action by the union or its officers."). As the Supreme Court has observed, the legislative history of Title I "reveals that Congress modeled [it] after the [Constitution's] Bill of Rights," and although Title I does not reach as far as the First Amendment itself, "the legislators intended § 101(a)(2) [of Title I] to restate a principal First Amendment value—the right to speak one's mind

without fear of reprisal." *Sadlowski*, 457 U.S. at 111.

Two provisions of the Bill of Rights lie at the center of this case. First, Section 101(a)(1), entitled "Equal Rights," provides:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). Section 101(a)(2), entitled "Freedom of Speech and Assembly," provides that, subject to reasonable rules,

> [e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings.

29 U.S.C. § 411(a)(2). An infringement of the rights enumerated in Sections 101(a)(1) or (a)(2), including retaliation for exercising such rights, is actionable under Section 102. *See* 29 U.S.C. § 412.

Plaintiff's Complaint contains six counts, each alleging a violation of Section 101(a)(1) or (a)(2). In the first five counts, asserted against all three Defendants, Plaintiff advances a claim arising out of each of the five discrete retaliatory events that allegedly occurred after the hostile encounter he had with Preston in the Convention hotel lobby, starting with Preston's filing of a false police report and concluding with Preston's abusive filing of the frivolous temporary restraining order. The sixth count, brought against Cox and AFGE only, concerns Cox's alleged improper removal to the National Committee of the investigation into Preston's actions. Before addressing the sufficiency of these claims, the court must first address Preston's argument that

Plaintiff failed to exhaust internal union grievance procedures before filing this lawsuit.

## A.    Failure to Exhaust Internal Union Procedures

Preston argues that Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), "requires" union members to exhaust reasonable hearing procedures before commencing legal proceedings. Preston's Mot. at 11. Thus, he contends, because an internal union investigation into Plaintiff's allegations is ongoing, Plaintiff has not exhausted his internal remedies and therefore his claims must be dismissed. *Id.* Preston's argument is unpersuasive.

First, Preston is simply wrong that Section 101(a)(4) "requires" administrative exhaustion before filing suit. To the contrary, Section 101(a)(4) provides that "[n]o labor organization shall limit the right of any member thereof to institute an action in any court . . . [p]rovided, [t]hat any such member *may* be required to exhaust reasonable hearing procedures . . . within such organization, before instituting legal or administrative proceedings." 29 U.S.C. § 411(a)(4) (emphasis added). By using the word "may" Congress gave "courts . . . discretion to decide whether to require exhaustion of internal union procedures." *Clayton v. Int'l Union*, 451 U.S. 679, 689 (1981). And in exercising such discretion, courts, as the Supreme Court has instructed, are to consider three factors:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . . and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* at 689.

Preston's exhaustion defense founders on the second factor. Generally, "[t]he burden is on the [movant] to establish that [the union's] internal procedures meet the requirements for the application of the exhaustion of remedies doctrine to union members' claims." 48A Am. Jur. 2d

§ 1116; *Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of Am.*, 152 F.3d 178, 186 (2d Cir. 1998); *Santo v. Laborers' Int'l Union of N. Am.*, 836 F. Supp. 2d 100, 112 (E.D.N.Y. 2011). Here, Preston has failed to meet his burden. In fact, he has offered no evidence at all of the union's internal grievance procedures. Preston's Mot. at 11-12. Tellingly, AFGE itself has not joined in Preston's exhaustion defense. Rather, the union states that "the AFGE Constitution does *not* require exhaustion [of] internal union remedies before a member can proceed to Court." Defs. AFGE and Cox's Reply to Pl.'s Mem., ECF No. 19 [hereinafter AFGE's Reply], at 8 n.2 (emphasis added). AFGE adds that that "[t]he doctrine of exhaustion of internal remedies would apply where there are internal union charges or other charges pending *against Massey*; here, Massey has no internal union remedies to exhaust." *Id.* In light of Preston's complete failure to demonstrate that internal union procedures could award Plaintiff the full relief he seeks, the court rejects his exhaustion argument.

### B.      Preston's Rule 12(b)(6) Motion

The court now turns to the sufficiency of Plaintiff's claims, starting with the challenges raised by Preston. Preston first argues that the claims against him are insufficiently pled because they do not identify which rights he allegedly violated under Section 101 of the LMRDA. Preston's Mot. at 6. That argument easily fails, however, as Plaintiff clearly has alleged violations of the rights contained in Sections 101(a)(1) and (a)(2). Compl. ¶ 39 and ¶¶ 41, 43, 46, 49 (incorporating all previous allegations).

Next, Preston contends that Plaintiff "fails to allege sufficient facts to make a plausible claim against [him]." Preston's Mot. at 7. Specifically, as to both Counts I and II—which pertain to Preston's filing of the false police report that led to Plaintiff's removal from the Convention—Preston argues that "there are no facts supporting the allegation that [the police report] was

somehow false." *Id.* at 7. That just is not so. Viewing the allegations in the light most favorable to Plaintiff, it is not at all implausible to infer that whatever Preston reported to the police and others was false. Plaintiff describes merely placing his arm around Preston and telling Preston that he could not bully him. *See* Compl. ¶ 18. To portray such inoffensive conduct as criminal to the authorities and union officials plausibly constitutes not just false reporting, but false reporting for the purpose of retaliating against Plaintiff for his opposition to Cox.

Additionally, Preston asserts that Count II cannot stand because he personally did not prevent Plaintiff from voting or otherwise participating in Convention activities; rather, he argues, the Sergeant-at-Arms Panel was responsible for removing Plaintiff. Preston's Mot. at 8. But that argument ignores the larger picture. Plaintiff has alleged that Preston's false report *caused* the Sergeant-at-Arms Panel to remove him from the Convention. Such an allegation is sufficient to state a claim at the motion to dismiss stage.

Finally, as to Counts III through IV, Preston argues for the first time in his reply brief that those claims are not viable because none of the conduct alleged—all of which occurred *after* the Convention—"actually prevented Massey from exercising his right to free speech and assembly." Def. Preston's Reply to Pl.'s Mem., ECF No. 18 [hereinafter Preston's Reply], at 3. Preston's argument, however, is foreclosed by *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347 (1989). The Supreme Court held in *Lynn* that the plaintiff's removal from his position as an elected official in retaliation for his protected expression was actionable under the LMRDA, even though that removal did not actually prevent the plaintiff from exercising his Title I rights. "Given that [the plaintiff] was removed from his post as a direct result of his decision to express disagreement with [a] dues proposal at the special meeting, and that his removal presumably discouraged him

from speaking out in the future, [the plaintiff] paid a price for the exercise of his membership rights." *Lynn*, 488 U.S. at 354.

Such is the case here. Plaintiff also "paid a price" for exercising his Title I rights. According to the Complaint, because Plaintiff dared to oppose Cox, Preston stripped him of his union position and other official benefits (Count III); made false statements to Plaintiff's supervisor resulting in a three-week administrative leave (Count IV); and filed an abusive motion for a temporary restraining order (Count V). All of those acts of retribution have the "potential chilling effect on [the exercise of] Title I free speech rights." *Id.* at 645. Moreover, as was the case in *Lynn*, because Plaintiff was an elected official, other union members who observed what happened to him "may well have concluded that one challenge[s] the union's hierarchy, if at all, at one's peril." *Id.* Plaintiff, therefore, in Counts III, IV, and V, has made out plausible claims against Preston for a violation of his Title I rights.

Finally, as to Count V, Preston argues that this court does not have subject matter jurisdiction over the common law abuse-of-process claim alleged therein. Preston's Mot. at 12-14. But Preston misconstrues Count V. It is not, as he asserts, a common law abuse-of-process claim. Rather, it is a statutory claim for a violation of Plaintiff's protected right of expression under Title I. As already discussed, Count V states a plausible claim for a violation of Title I.

Preston's Motion to Dismiss is therefore denied in its entirety.

### C.    AFGE's Rule 12(b)(6) Motion:  Counts I through V

Plaintiff seeks to hold AFGE liable for Preston's violations of the LMRDA under the doctrine of *respondeat superior* liability. "It has long been established that a collective entity, including a labor organization, 'may only be held responsible for the authorized or ratified actions of its officers and agents.'" *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395,

1427 (D.C. Cir. 1988) (citation omitted); *see also N. River Energy Corp. v. United Mine Workers of Am.*, 664 F.2d 1184, 1190 (11th Cir. 1981) (stating that common-law agency principles "hold a union liable for all acts of its officers and agents within the scope of their general authority"). "This standard of liability extends generally to situations in which an international union" or, as in this case, a national union "is sued for the conduct of its affiliated local." *Berger*, 843 F.2d at 1427. To hold the parent union liable for its affiliate's actions, a "plaintiff must adduce specific evidence that the [parent] 'instigated, supported, ratified, or encouraged' those actions, or 'that what was done was done by their agents in accordance with their fundamental agreement of association.'" *Id.* (quoting *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217-18 (1979)). AFGE asserts that the Complaint contains no factual allegations that would satisfy this standard of liability.

The court agrees with AFGE as to Counts III through V, but not as to Counts I and II. As to Counts I and II, Plaintiff has made out a plausible claim to hold AFGE liable for Preston's conduct under a direct theory of *respondeat superior*. Plaintiff has alleged that, while at the Convention, Preston not only was acting in his capacity as President of Local 17, but as a Convention sergeant-at-arms for the AFGE. Compl. ¶ 9. As provided in AFGE's Constitution, which AFGE attached to its Motion, a sergeant-at-arms has various duties which generally include "assist[ing] the presiding officer in the maintenance of order." AFGE Const.. Art. XI. Reading the Complaint in the light most favorable to Plaintiff, it is plausible to infer that, while Preston was at the Convention, he was acting in his capacity as a sergeant-at-arms—a union official or agent— when he made false reports about Plaintiff's actions to both the police and the Sergeant-at-Arms Panel. Accordingly, Plaintiff may proceed against AFGE on Counts I and II under a theory of

*respondeat superior* liability.

The same cannot be said, however, for Counts III through V. Those counts concern Preston's conduct that took place after the Convention and thus, at least as alleged, after his role as a sergeant-at-arms had come to an end. To the extent Preston was acting in any official capacity as to Counts III through V, it was as President of Local 17. And, to hold AFGE liable for Preston's actions in that capacity, Plaintiff would have to allege facts from which a reasonable inference could be drawn that AFGE "instigated, supported, ratified, or encouraged those actions" or that Preston's actions were done "in accordance with the fundamental agreement of association" between AFGE and Local 17. *Berger*, 843 F.2d at 1427. The Complaint does not allege sufficient facts to support such an inference. Indeed, the Complaint is devoid of any allegations that any official or agent of AFGE collaborated with Preston or in any way supported the retaliatory actions he took against Plaintiff after the Convention ended.

Returning to Count II, AFGE raises three additional objections. First, it argues that that claim rests on mere procedural objections to the process that Plaintiff received (or did not receive) before his expulsion from the Convention. AFGE and Cox's Mot. at 8. And, because Plaintiff has not brought a claim under Section 101(a)(5) for a violation of the procedural requirements for union discipline, AFGE argues, that claim must be dismissed. AFGE, however, reads Count II too narrowly. In Count II, Plaintiff does not allege a procedural violation, but alleges a deprivation of his right to vote, assemble, and express himself at the Convention, which is clearly actionable under Title I. Compl. ¶ 23 (alleging that Plaintiff was prevented from "participat[ing] in any subsequent Convention activities, including the vote on the proposed per-capita tax increase"); *see also* ¶ 42 (alleging the same).

Second, AFGE contends that Plaintiff has not made out a Title I claim under Count II

because he "was expelled from the Convention for *conduct* and not for statutorily protected speech." AFGE and Cox's Mot. at 8. AFGE cites to the actual Sergeant-at-Arms Panel report regarding Plaintiff, which states: "There was an incident on Sunday August 18, 2015 and a delegate's conduct tended to disrupt the National Convention." *Id.*, Ex. 1, ECF No. 14-1. The Sergeant-at-Arms Panel's report does not, however, specify what the "conduct" was that led to Plaintiff's dismissal. Based on the Complaint, it is readily conceivable that the "conduct" at issue was Plaintiff's electioneering and expression. The ambiguous Sergeant-at-Arms Panel report— even assuming that it is properly before the court on a motion to dismiss—does not overcome the reasonable inferences in Plaintiff's favor that can be drawn from the well-pleaded facts of the Complaint.

AFGE's final argument as to Count II is that Plaintiff essentially is attempting to re-litigate the Sergeant-at-Arms Panel's conclusion. AFGE and Cox's Mot. at 9. Not so. Plaintiff is seeking to remedy harms arising from an adverse action that was taken against him by the Sergeant-at-Arms Panel, which was set in motion by Preston's false and retaliatory reporting of criminal or tortious acts. To prove such a violation, Plaintiff would not necessarily have to re-litigate the correctness of the discipline the Sergeant-at-Arms Panel imposed.

In light of the foregoing, AFGE's Motion is denied as to Counts I and II, but granted as to Counts III through V.

### D.    AFGE and Cox's Rule 12(b)(1) Motion:  Count VI

In Count VI, Plaintiff asserts that "Cox improperly took jurisdiction of three serious allegations Plaintiff had filed against Preston because of Preston's political and financial support, as well as Plaintiff's opposition to President Cox and his policies, in violation of the 'Bill of Rights for Union Members.'" Compl. ¶ 53. Plaintiff alleges that, before Cox took over the investigation into Preston's behavior, the Local Committee found "probable cause" for Plaintiff's allegations

against Preston. *Id.* ¶ 34. As of the filing of the Complaint, the National Committee convened by Cox had yet to interview a single witness. *Id.* ¶¶ 36, 53. AFGE and Cox raise a host of arguments for dismissal of this claim, but the court need only address one: the court agrees that Plaintiff lacks standing to assert Count VI because he has failed to allege any cognizable injury-in-fact.

To establish standing, a plaintiff "must show an injury-in-fact that is 'actual or imminent, not conjectural or hypothetical,' and must show causation and redressability." *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827, 829 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Courts are generally "hesitant to find standing when the asserted injury 'depends on the unfettered choices made by independent actors not before the courts.'" *Id.* at 831 (finding no standing where the plaintiffs' allegations—that certain committee members would likely disclose confidential information—were too speculative); *see also Arpaio*, 797 F.3d at 22 (determining that a plaintiff lacked standing where the injury alleged depended on the commission of future crimes).

Plaintiff articulates his injury with respect to Count VI as follows. He assumes that because the National Committee—appointed by Cox—is comprised of Cox's political supporters, the National Committee will decide against Plaintiff and in favor of Preston. And, because the Local Committee had already found "probable cause," it was likely to decide in his favor and against Preston. Thus, Plaintiff's claimed injury is that Cox's taking of jurisdiction over his complaints against Preston means that "Preston [will] escape punishment, thereby frustrating Plaintiff's administrative remedies." Compl. ¶ 53.

The problem with Plaintiff's asserted injury is two-fold: it is not concrete and it is too speculative. Recently, in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), the Supreme Court emphasized that, for purposes of establishing standing, concreteness requires that the injury

"actually exist[s]," that is, the asserted injury must be "real" and "not abstract." That is not to say that an injury may not be "intangible." Indeed, it certainly can be, but that type of injury, according to the Court, must be evaluated in light of the harm that Congress intended to protect against. *See id.* at 1549. Here, Title I of the LMRDA seeks to protect union members' right to engage in the governance of their own union through voting, expression, and assembly. In light of that concern, it is difficult to conceive how Plaintiff's alleged injury—"frustrati[on of his] administrative remedies"—is truly concrete. Cox's taking of jurisdiction does not directly infringe upon any of Plaintiff's Title I rights and, its chilling effect, if at all, is modest in comparison to the other adverse actions he has alleged. Instead, his asserted injury is of the "abstract" variety that the Court in *Spokeo* held did not satisfy the concreteness requirement.

Moreover, Plaintiff's alleged injury is far too speculative. It depends on highly conjectural assumptions about *both* investigative committees and ultimately how each would rule. The Court of Appeals recently confronted similar circumstances in *R.J. Reynolds Tobacco*, 810 F.3d at 827, where various tobacco companies sought to challenge the appointment of three members to the Tobacco Products Scientific Advisory Committee because of conflicts of interest. Among the injuries the plaintiffs asserted was that the continued service of the three conflicted members "increased [the] risk that the FDA will regulate menthol tobacco products adversely to plaintiffs' interests." *Id.* at 829. The Court of Appeals rejected that asserted injury, holding that "the appointment of the challenged committee members by no means rendered the risk of eventual adverse FDA action substantially probable or imminent." *Id.* at 830. Indeed, the Court of Appeals observed, whether the FDA itself would act on a proposed rule or what that rule might look like "is quite speculative." *Id.* The same is true here. Plaintiff's assertion that Cox's action increased the risk that Preston would "escape punishment," and thereby increased the risk that Plaintiff

himself would lose, is entirely speculative.  Plaintiff cannot allege, with any degree of certainty, what the National Committee will do or what the Local Committee would have done if it had been given the opportunity to see its investigation through to the end.  Accordingly, the court concludes that Plaintiff lacks standing to assert Count VI against AFGE and Cox.

### D.    Cox's Rule 12(b)(6) Motion:  Counts I through V

Cox has moved to dismiss Counts I through V against him on the ground that Plaintiff has not made any particularized factual allegations about his conduct with respect to those claims. AFGE and Cox's Mot. at 3 n.2.  The court agrees.  Other than the allegation that Cox unlawfully took over Plaintiff's grievance against Preston—which the court already has dismissed for lack of standing—the Complaint makes no other averments about Cox's actual conduct.  Plaintiff alleges that Preston and Cox were close allies, *see* Compl. ¶ 14, but does not allege what, if anything, Cox actually did to violate his Title I rights.

Plaintiff argues that his claims against Cox can survive because "the Complaint makes a plausible claim that Preston and President Cox collaborated to violate Plaintiff's rights under the LMRDA."  Pl.'s Opp'n to AFGE and Cox's Mot. to Dismiss, ECF No. 17, at 7.  But for such a claim to survive a motion to dismiss, the complaint must state "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  Here, the Complaint contains no allegations of fact that would suggest that Cox and Preston agreed to retaliate against Plaintiff for his opposition to Cox.

Accordingly, having already dismissed Count VI against Cox, the court also dismisses Counts I through V against him and thus grants his Motion to Dismiss in its entirety.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, Preston's Motion to Dismiss is denied in its entirety.  AFGE's

Motion to Dismiss is denied as to Counts I and II, but granted as to Counts III through VI.  And,

Cox's Motion to Dismiss is granted in its entirety.


Dated:  July 8, 2016                                        Amit P. Mehta
                                                                   United States District Judge