# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**DOUGLAS E. MASSEY,**             )
                                   )
    **Plaintiff,**    )
                                   )
    v.               )    Case No. 1:15-cv-02112 (APM)
                                   )
**AMERICAN FEDERATION OF**         )
**GOVERNMENT EMPLOYEES, et al.,**  )
                                   )
    **Defendants.**   )
_____)

## <u>MEMORANDUM OPINION</u>

**I.    INTRODUCTION**

Plaintiff Douglas Massey filed this lawsuit against his union, Defendant American Federation of Government Employees ("AFGE"), and one of its officials, Defendant William A. Preston, alleging violations of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411. Plaintiff asserts that Defendants falsely accused him of threatening and assaulting Preston at an AFGE National Convention ("Convention") for opposing the candidacy of the incumbent AFGE President, David Cox, and then retaliating against him in various ways, each in violation of the LMRDA. In a previous ruling, the court permitted Plaintiff to proceed on all counts of his Complaint against Preston, dismissed certain counts against the AFGE, and dismissed Cox from the case. *See Massey v. Am. Fed'n of Gov't Emps.*, 196 F. Supp. 3d 35 (D.D.C. 2016). Now before the court are Preston's and AFGE's Motions for Summary Judgment.

In their Motions, Defendants contend that the doctrine of res judicata precludes all of Plaintiff's remaining claims. Specifically, Defendants point to an earlier litigation decided in D.C. Superior Court, in which Plaintiff accused Preston of abuse of process for seeking a

restraining order against him as retribution for refusing to support Cox. That case proceeded to a bench trial. Preston testified that Plaintiff assaulted and threatened him at the Convention; Plaintiff denied those accusations, claiming he merely placed his arm around Preston and told Preston that he could not bully him into supporting Cox. The court credited Preston's testimony. It then concluded that the confrontation at the Convention gave Preston a genuine reason to fear Plaintiff and, therefore, Preston had applied for a restraining order in good faith, and not as retribution for Plaintiff's political views. Defendants in this case now argue that the doctrine of res judicata not only bars Plaintiff from re-litigating those factual issues in this court, but also precludes him from proving his remaining claims.

The court agrees. Plaintiff's Complaint advances five counts, each of which rests on the same theory—that Preston invented out of whole cloth the threats and assault in order to get back at Plaintiff for opposing Cox's re-election. The Superior Court actually and necessarily found against Plaintiff on those issues, and, consequently, the doctrine of res judicata requires treating those adverse findings as uncontested in this case. As a result, Plaintiff cannot prove the facts underlying the claims he advances in this court.[1] Accordingly, the court grants Defendants' Motions for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

Plaintiff Douglas Massey is a member of Defendant American Federation of Government Employees ("AFGE"). *See* Def. Preston's Mot. for Summ. J., ECF No. 35, Mem. in Supp., ECF No. 36 [hereinafter Preston Mot.], at 1, 4. In 2015, Plaintiff was elected to serve as Second Vice President for a local chapter of AFGE, Local 17. *Id*. at 4. At that time, Defendant William A.

---

[1] In light of this holding, the court does not address Defendants' other arguments in support of summary judgment.

2

Preston was the President of Local 17. *Id.* At some point in 2015, a rift developed between Plaintiff and Preston, stemming in part from Plaintiff's opposition to the re-election campaign of AFGE's incumbent President, Daniel Cox. *Id.* at 4–5. Both Plaintiff and Preston were elected as delegates to AFGE's 2015 National Convention ("Convention"), held in Orlando, Florida, in August 2015. *Id.* at 1–2, 4–5.

There, the acrimony between Plaintiff and Preston would come to a head, culminating in a physical confrontation at the Convention hotel. *See* Preston Mot., Ex. 1, ECF No. 36-1 [hereinafter Trial Tr.], at 67–74. Both men recount the episode quite differently. According to Preston, while he was tending to his official duties at the Convention, he noticed Plaintiff and smiled at him. Plaintiff immediately approached him, said "get that bullshit smile off your face," and then grabbed him by the back of the neck and said "don't threaten me." *Id.*, at 70–73. After talking to his wife, Preston then reported the incident first to the AFGE Sergeant-at-Arms Committee and then to hotel security and the police. *Id.* at 73–75, 119–21. Plaintiff, for his part, admits that there was a confrontation at the hotel, but denies that he threatened or grabbed Preston. According to Plaintiff, before the Convention, he had criticized Cox's spending of union funds and had told Preston that he would be opposing Cox's re-election, even though Preston strongly backed Cox. Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 39 [hereinafter Pl.'s Opp'n], Ex. 1, ECF No. 39-1 [hereinafter Massey Decl.], ¶¶ 7–8. At the Convention itself, Plaintiff actively campaigned against Cox, handing out flyers critical of Cox and urging his defeat. *Id.* ¶¶ 7, 10. Inside the hotel, Preston approached him, looked at one of Plaintiff's flyers, and asked him to support Cox. When Plaintiff declined, Preston purportedly threatened to take away Plaintiff's official time—that is, time he could work as a union official during regular work hours—if he did not support Cox. *Id.* ¶ 12. The two then walked away from one another, but a few minutes later, Plaintiff claims that

3

he approached Preston, merely put his arm around his shoulder, and said "I'm the wrong guy to bully. You cannot bully me this time." *Id.* ¶ 14. Plaintiff denies that he ever grabbed Preston by the neck.

Shortly thereafter, the AFGE Sergeant-at-Arms Committee (the "Committee") convened to investigate the incident. Preston Mot. at 5; Def. AFGE's Mot. for Summ. J., ECF No. 37 [hereinafter AFGE Mot.], at 1–2. The Committee heard from both Plaintiff and Preston, credited Preston's version of events, and concluded Plaintiff had disrupted the Convention. AFGE Mot. at 1–2. As punishment, the Committee prohibited Plaintiff from further participating in Convention activities, except voting for national officers. *Id*. After the Convention, Preston notified Plaintiff that he intended to remove Plaintiff's official time. Preston Mot. at 5.

Roughly two weeks after the incident, Preston filed an application for a temporary restraining order ("TRO") and a petition seeking a preliminary injunction against Plaintiff in D.C. Superior Court. Preston Mot. at 5–6. The D.C. Superior Court denied the TRO, and Preston, who no longer worked in the same office as Plaintiff, abandoned his suit. *Id*.

Determined to hold Preston accountable for making false accusations, Plaintiff filed his own suit in Small Claims Court in the D.C. Superior Court on December 11, 2015, asserting a common law abuse of process claim. *Id.* at 6. The case proceeded to a bench trial on June 28, 2016, before the Honorable Joseph Beshouri. *Id*. Both Plaintiff and Preston testified at the trial, relating the vastly different accounts described above. Trial Tr. at 17–59, 62–117. The only other witness to testify was Preston's wife, who said that Preston had called her from the Conference "very upset" and "shaking" and had told her that "Doug Massey had assaulted him in public . . . by placing his fingers and thumb on the back of his neck and squeezing very hard to cause pain, and had made threatening comments." *Id.* at 119–20.

4

Judge Beshouri sided with Preston. He credited the testimony of Preston and Preston's wife, and found that Preston had sought the TRO based on a legitimate fear of Plaintiff arising from the incident at the Convention. *Id.* at 153–57. Judge Beshouri entered judgment in favor of Preston, which Plaintiff did not appeal.

## B. Procedural Background

On December 7, 2015, around the same time that Plaintiff filed suit in D.C. Superior Court, he also filed suit in this court, alleging that Defendants Preston, Cox, and AFGE had fabricated claims against him in retaliation for opposing Cox, in violation of his rights under the Labor-Management Reporting and Disclosure Act. *See* Compl., ECF No. 1 (filed Dec. 7, 2015). Defendants each filed Motions to Dismiss Plaintiff's Complaint. *See* Def. Preston's Mot. to Dismiss, ECF No. 13; Defs.' AFGE and Cox's Mot. to Dismiss, ECF No. 14. The court (1) granted Defendant Cox's Motion in its entirety and dismissed all claims against him, (2) granted in part and denied in part Defendant AFGE's Motion and dismissed all claims against AFGE except for Counts I and II, and (3) denied Defendant Preston's Motion in its entirety. *See Massey*, 196 F. Supp. 3d at 35.

The parties then proposed pre-discovery summary judgment briefs on the question whether the doctrine of res judicata barred Plaintiff's remaining claims. *See* Joint Rule 26(f) Report, ECF No. 33, at 1, 3. The court agreed to summary judgment briefing on that narrow issue, *see* Minute Order, Sept. 22, 2016, and now turns to Defendants' Motions.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the

substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## IV. DISCUSSION

The court starts with a discussion of the general principles of res judicata, and then applies them to the merits of the parties' dispute.

### A. Res Judicata

Res judicata collectively refers to the doctrines of claim and issue preclusion, which, generally speaking, prevent a litigant from bringing before the court a legal claim or issue that another tribunal has already resolved. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Of relevance to the parties' current dispute, issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal quotation marks omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) (explaining that "once a court has decided an issue of fact or law necessary to its judgment, that

decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case" (internal quotation marks omitted)).

For a defendant to successfully show that a final judgment in a prior case precludes the plaintiff from litigating an issue in the present case, the defendant must demonstrate three elements: "[1], the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case[; 2], the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case[; and] [3], preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination." *Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (alterations in original) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

### B. Preclusive Effect of the Superior Court Litigation

As to the first issue-preclusion element, the court easily finds that Plaintiff raised "the same issue now being raised [which was] contested by the parties and submitted for judicial determination" before the D.C. Superior Court. *See Martin*, 488 F.3d at 454. The following exchange between Plaintiff and Judge Beshouri supports that conclusion:

> THE COURT: We've got two different versions of what happened at the top of that set of escalators. Who did what seems to be very much at issue. Who said what. Who did what.
>
> If I believe you, if I credit your testimony about what happened there, then it seems to me that I move on to consider what was presented, what was the intended goal in the application for the temporary protection order.
>
> If I credit the version of events offered instead by Mr. Preston, there would be basis for an application for a temporary protection order, right? . . . Because if I credit that version, he had

>   clear basis, factual basis, good reason to go to the Court to see[k] a protection order, agreed?
>
>   MR. MASSEY: Correct.

Trial Tr. at 150–51. Thus, as Plaintiff conceded, the parties directly contested what happened at the Convention and submitted that question to Judge Beshouri to resolve.

Next, the court finds that, as to the second element, Judge Beshouri "actually and necessarily determined" the parties' factual dispute when making his ultimate decision. After weighing the competing versions of what took place at the Convention, Judge Beshouri made the following findings of fact and conclusion of law before entering judgment in favor of Preston:

> [H]aving found [Preston's wife] credible and having found Mr. Preston by [and] large credible, I do conclude that the events that transpired at the top of that escalator were sufficient to give [Preston] the fear that prompted him at his wife's suggestion to make contact with the sergeant-at-arms and to present his version of events to the sergeant-at-arms and to achieve the resolution that was achieved then. I do find then that there was a basis for him to seek a [TRO] . . . .
>
> I do conclude from my assessment of [Preston's] credibility, his testimony, his wife's testimony that he had good basis to seek that [TRO] . . . and therefore, he had no ulterior motive in doing so, or using the process other than it would be used [in] the regular prosecution of the case.

*Id.* at 153–57.[2] The above-quoted findings and conclusion leave little doubt that Judge Beshouri "actually determined" that the confrontation between Plaintiff and Preston at the Convention unfolded as Preston—not Plaintiff—described it, and those events supplied Preston with legitimate cause to seek a TRO against Plaintiff. By the same token, Judge Beshouri rejected Plaintiff's contention that Preston sought the TRO to punish Plaintiff for opposing Cox's re-election. *See,*

---

[2] Plaintiff seems to suggest that issue preclusion does not apply in this case because Judge Beshouri did not commit his factual findings and reasoning to writing, but instead recited them orally in open court on the record. Pl.'s Opp'n at 4–5. Plaintiff, however, cites no case for the proposition that factual findings memorialized on the record following, as here, a full trial on the merits lack preclusive effect.

*e.g.*, Trial Tr. at 157 (Judge Beshouri holding: "If there was a tie here, all ties go to the defendant, and given my assessment of his credibility and his wife's credibility, *I don't frankly find it even a tie. That's the judgment of the Court. The judgment is therefore for the defendant.*") (emphasis added).

Plaintiff disputes, however, that Judge Beshouri "necessarily determined" those contested issues. Specifically, he argues that "Preston's motive in filing an action for a TRO was not even relevant to a claim of abuse-of-process." Pl.'s Opp'n at 10. He contends the court can correct that "mistake" "by ruling as a matter of law that Judge Beshouri's determination as to ulterior motive was not necessary to his judgment . . . and could not be 'necessary' let alone 'essential' to an abuse of process judgment." *Id*. Plaintiff's argument rests on a basic misunderstanding of the common law tort of abuse of process. "To prevail on abuse of process [under D.C. law], a plaintiff must . . . demonstrate *not only ulterior motive*, but success in achieving illegitimate ends with resulting injury." *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 137–38 (D.C. Cir. 1989) (emphasis added). Stated another way, "[t]here are two essential elements to an abuse of process claim: '(1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge.'" *Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*, 677 F.Supp.2d 195, 199 (D.D.C. 2010) (quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959)). Thus, contrary to Plaintiff's contention, an "ulterior motive" is an indispensable element of an abuse of process claim, and, accordingly, Judge Beshouri's finding that Preston lacked such motive was clearly essential to his judgment in favor of Preston. *See Yamaha*, 961 F.2d at 254 ("[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the

9

parties" (quoting Restatement (Second) of Judgments § 27 (1982)). Therefore, Judge Beshouri's conclusions that Plaintiff had assaulted Preston at the Convention and that the assault had provided Preston good cause to pursue a TRO against Plaintiff were both "actually and necessarily determined by a court of competent jurisdiction." *Martin*, 488 F.3d at 454.

Finally, as to the third factor, the court finds that preclusion in this case would not be unfair to Plaintiff. *Id.* at 454. Plaintiff's incentive to litigate the issue of Preston's motive was "no less present" in the D.C. Superior Court case than in the present case, and the stakes of this case are not of "vastly greater magnitude." *Id.* at 455 (internal quotation marks omitted). Nor were the D.C. Superior Court proceedings, as Plaintiff contends, "seriously defective." Pl.'s Opp'n. at 17 (quoting *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971)). Plaintiff argues that he "did not have an incentive to litigate the 'ulterior motive' issue" because of the nature of the Small Claims Branch of the D.C. Superior Court, where the cases concern lower dollar amounts and "the rules of evidence are relaxed." Pl.'s Opp'n at 17–18. Plaintiff contends that he never would have filed suit in Superior Court had he been aware that he was jeopardizing his federal claims, as evidenced by the fact that, in Superior Court, he "did not hire a lawyer," and "sought only damages . . . in the amount of $5,000," which pales in comparison to the damages he now seeks in federal court. *Id.* at 17–19. That argument is not at all convincing. Plaintiff pursued to final judgment a lawsuit seeking monetary relief from Preston arising from the same events that are at issue in this case. He cannot now credibly contend that the nature of the earlier forum—Small Claims Court—or the amount he sought in damages—no more than $5,000—gave him less incentive to litigate Preston's alleged bad faith any less forcefully than in this case.

Plaintiff also contends that it would be unfair to prevent him from bringing the current suit as "there is at least a risk that the proceedings in [Superior Court] were defective," *id.* at 17, but

10

that argument, too, proves unavailing. Plaintiff provides no further explanation or support for the assertion that Superior Court proceedings were at all defective. He intimates that the availability of discovery and a jury in this case will afford him greater opportunity to prove his case than in Superior Court, *see id.* at 18, but that argument is a nonstarter. The critical question here is not whether the present forum affords greater rights, but whether the earlier forum was "seriously defective." It plainly was not. If anything, Plaintiff made a conscious decision not to aggressively pursue his Superior Court case. For instance, Plaintiff candidly admitted to Judge Beshouri that he *chose* not to aggressively cross-examine Preston's wife. Trial Tr. at 156 (Judge Beshouri observing: "And while you've explained, Mr. Massey, that you only wanted to go but so far in your cross-examination of her, that was your choice to make."). Thus, having had, but passed on, the opportunity to cross-examine a critical adverse witness, Plaintiff cannot now complain that the Superior Court proceedings were inadequate.

Plaintiff's remaining arguments against applying issue preclusion fare no better. The court rejects Plaintiff's argument that Judge Beshouri's findings cannot have a preclusive effect because he "did not determine that Preston did not violate Massey's rights under the [Labor-Management Reporting and Disclosure Act]." Pl.'s Opp'n at 6. Plaintiff again misconstrues the law. "[I]t is clear beyond cavil that '[f]or preclusion purposes, an 'issue' is not limited to a 'cause of action.'" *Brewer v. District of Columbia*, 105 F. Supp. 3d 74, 89 (D.D.C. 2015) (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 953 (D.C. 1980)).

Next, Plaintiff argues that Judge Beshouri's findings only give rise to an *inference* about the events that occurred at the Convention, but do not foreclose Plaintiff from proving the alleged threats and assault necessary to his claims in this case. Pl.'s Opp'n at 7. That argument, however, fundamentally misconstrues Judge Beshouri's decision. As detailed above, Judge Beshouri

11

explicitly considered two conflicting versions of what occurred at the Convention, and he sided with Preston, finding his testimony to be "entirely credible." Trial Tr. at 157.[3] Thus, when Judge Beshouri found that Preston "had a good basis to seek that restraining order," he also necessarily found that Plaintiff assaulted Preston, and not the other way around. Thus, this court need not infer how Judge Beshouri perceived the Convention events; he directly and clearly stated his findings on the record.

Moreover, Plaintiff contends that Judge Beshouri's determination that "Preston had no ulterior motive was based on faulty reasoning." Pl.'s Opp'n at 11. However, that argument misapprehends this court's role in deciding whether res judicata applies in a given case. "[A] court conducting an issue preclusion analysis does not review the merits of the determinations in the earlier litigation." *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006); *see also Nat'l Post Office Mail Handlers, Watchmen, Messengers, and Grp. Leaders Div. of Laborers' Int'l Union of N. Am. v. Am. Postal Workers Union*, 907 F.2d 190, 194 (D.C. Cir. 1990) ("The doctrine of issue preclusion counsels us against reaching the merits in this case, however, regardless of whether we would reject or accept our sister circuit's position."). Therefore, this court is not permitted to second-guess Judge Beshouri's rationale for his findings, only his actual findings matter.

Finally, Plaintiff seems to argue that the denial of Preston's TRO petition somehow forecloses the application of res judicata in this case. Pl.'s Opp'n at 2–3. He would be wrong. Issues litigated in a preliminary injunction action "are not even law of the case, much less res judicata in other litigation." *Cmty. Nutrition Inst. v. Block*, 749 F.2d 50, 56 (D.C. Cir. 1984).

---

[3] Judge Beshouri did state that he found "puzzling" one aspect of Preston's testimony, but that aspect of his testimony did not pertain to what happened between Plaintiff and Preston at the Convention. *See* Trial Tr. at 155.

Accordingly, the court finds that Judge Beshouri's findings of fact crediting Preston's testimony about the confrontation at the Convention and Preston's good faith in applying for the TRO are res judicata in this case and cannot be re-litigated. *Martin*, 488 F.3d at 454.

### C. Effect on Plaintiff's Ability to Litigate His Claims

Having so concluded, the court enters judgment in favor of Defendants on all counts. Each count, at bottom, relies on the same factual predicate: Preston contrived the charge that Plaintiff threatened and assaulted him at the Convention as retribution for Plaintiff's opposition of Cox. Plaintiff alleges that Defendants retaliated against him by "intentionally and maliciously":

- "making false allegations to Orlando police officers in an attempt to have Plaintiff removed from the Convention" (Count I, Compl. ¶ 40);

- "expelling Plaintiff from the Convention" based upon Preston's false accusations (Count II, Compl. ¶¶ 23, 42; Massey Decl. ¶¶ 16, 21–22);

- "ma[king] good on [Preston's] threat" made at the Convention to "remov[e] Plaintiff from his elected position[,] . . . , remov[e] his official time, and ban[ ] him from Local 17's office" (Count III, Compl. ¶¶ 24, 44; Massey Decl. ¶ 25);

- "making defamatory statements to Plaintiff's supervisor [that Plaintiff had threatened and assaulted him at the Convention] in an attempt to have him removed from the building and disciplined" (Count IV, Comp. ¶¶ 31, 47; Massey Decl. ¶ 29); and

- "abusing the judicial process by offering false statements [concerning the alleged threats and assault] in court in an effort to get a temporary restraining order and a preliminary injunction against Plaintiff" (Count V, ¶¶ 32, 50; Massey Decl. ¶ 30).

The court agrees with Preston that each of the above counts is "based on the incident at the hotel and the motive Preston had to take subsequent action against [Plaintiff]." Preston Mot. at 16. And, in light of Judge Beshouri's findings that Preston did not falsely accuse Plaintiff of threats and assault, and that his post-Convention actions were not motivated by an intent to retaliate, those factual findings must be treated as undisputed for purposes of Defendants' Motions for Summary Judgment. Thus, Plaintiff is precluded from establishing a genuine dispute of material fact as to

13

the factual predicates of his remaining claims. The court therefore enters judgment in favor of Defendants as to all remaining counts of the Complaint. *Cf. Otherson v. U.S. Dep't of Justice, I.N.S.*, 711 F.2d 267, 274, 278 (D.C. Cir. 1983) (affirming dismissal of wrongful termination claims because claimant was precluded from arguing that he had not actually violated the terms of his employment because, in a prior criminal case, a trial judge had determined that he had in fact committed misconduct while on duty); *Brewer*, 105 F. Supp. 3d at 89, 98–99 (concluding that the plaintiff had failed to state claims because the fact-finding in an earlier litigation was preclusive as to an essential element of those claims).

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motions for Summary Judgment. A separate order accompanies this Memorandum Opinion.

Dated: May 15, 2017

Amit P. Mehta
United States District Judge